UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-62168-Civ-COOKE/TORRES

PHILADELPHIA INDEMNITY
INSURANCE COMPANY,
a foreign corporation,

    Plaintiff,

vs.

SABAL INSURANCE GROUP, INC.,
a foreign corporation and
IAN MARSHALL NORRIS,

    Defendants.
_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Philadelphia Indemnity Insurance Company ("Plaintiff") seeks a judicial declaration of its rights related to liability insurance coverage it issued to Sabal Insurance Group, Inc. and its owner, Ian Marshall Norris (collectively, "Defendants"). Each side has filed a motion for summary judgment (ECF Nos. 17, 20). I have reviewed the Parties' filings, the record, and the relevant legal authorities. For the reasons given below, Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") is **GRANTED**, and Defendant's Motion for Summary Judgment ("Defendants' Motion") is **DENIED**.

### I. BACKGROUND

Parties dispute whether a Stipulated Settlement Agreement between Defendants and the State of Florida stemming from an alleged grand theft is covered under the insurance policy Defendants have with Plaintiff. Plaintiff issued to Defendants a Private Company Protection Plus Liability Policy ("Policy"), which included Directors and Officers ("D&O") liability insurance that was effective at the time of this action. *See* Statement of Facts in Support of Defs.' Mot. Summ. J., ¶¶ 1–3, ECF No. 18 ("Defs.' SMF"); Pl.'s Statement of

Undisputed Material Facts, ¶ 1, ECF No. 19 ("Pl.'s SMF").[1]

The Policy covered certain losses from claims made against Defendants for wrongful acts. Defs.' SMF, ¶¶ 4–5. A "D&O Wrongful Act"[2] included an "act, error, omission, misstatement, misleading statement, neglect, or breach of duty committed or attempted by" either Defendant. ECF No. 18-1, at 19. "[A] criminal proceeding commenced by the return of an indictment" counted as a "Claim," *Id.*, at 25, and a "Loss" included "Damages" and "Defense Costs." *Id.*, at 27. "Damages" were defined as "any monetary judgment . . . or monetary settlement, including the punitive, exemplary or multiple portion of any judgment (to the extent such damage is insurable under law . . .)," *id.* at 25, while "Defense Costs" encompassed most "reasonable and necessary legal fees and expenses incurred in the defense of a Claim . . . ." *Id.*, at 25–26.

Importantly, the Policy also excluded payments for certain losses. It barred payments "arising out of, based upon or attributable to" Defendants for either "gaining any profit, remuneration or advantage to which [Defendants] were not legally entitled," or "any dishonest or fraudulent act or omission or any criminal act or omission by [Defendants]." *Id.*, at 29. These exclusions only applied, however, "if a final and non-appealable judgment or adjudication establishes the Insured committed such act or omission." *Id.* The Policy also did not consider "criminal or civil fines or penalties imposed by law" a covered "Loss," nor did "Loss" include "matters deemed uninsurable under the law . . . ." *Id.*, at 27.

The State of Florida ("State") charged Defendants, by information, with five counts of grand theft related to alleged overcharging of the Miami-Dade Aviation Department ("MDAD") for worker's compensation and general liability insurance that MDAD pays on behalf of Quality Aircraft Services ("QAS"), its baggage handler. Defs.' SMF, ¶ 15; Pl.'s SMF, ¶¶ 7–9. Defendants allegedly fraudulently obtained over $416,000.00, though the amount of fraud purportedly within the statute of limitations was $180,807.87. Pl.'s SMF ¶ 13. By February 2016, Defendants entered into a Stipulated Settlement Agreement with the

---

[1] A movant's statement of undisputed material facts set forth in its Motion and related filings are deemed admitted to the extent they are supported by evidence in the record and not specifically disputed by the non-movant in an opposing statement of facts. S.D. Fla. L.R. 56.1(b); *see also Gossard v. JP Morgan Chase & Co.,* 612 F. Supp. 2d 1242, 1245–46 (S.D. Fla. 2009).

[2] The Policy highlights its definitional terms in bold. This Order only uses quotations when referring to these Policy terms.

State, where the State agreed to *nolle prose* all charges and Defendants agreed to pay a "settlement sum" of $303,807.97. ECF No. 1-4, at 3. This sum consisted of a "Payment" to the MDAD for $183,807.87; a "Donation" to a victims' assistance fund for $100,000.00; and "Costs of Investigation" payable to the MDAD for $20,000.00. *Id.* Further, Defendants agreed to pay for an independent monitor, to institute an internal training program, and to refrain from engaging with MDAD for a period of time. *See id.*, at 4–6. The state court ratified the agreement in February 23, 2016. *Id.* ¶ 35. Parties do not dispute that the Stipulated Settlement Agreement was not a "final and non-appealable judgment or adjudication" as defined under the Policy. Defs.' SMF ¶¶ 14, 31–32.

Plaintiff issued a reservation of rights at three different times before the Stipulated Settlement Agreement—the first two after each Defendant was subpoenaed in October and November 2014, and again after Defendant Ian Marshall Norris ("Norris") was arrested in January 2015—accepting the various state criminal proceedings as a "Claim" under the Policy. *See* Defs.' SMF, ¶ 17; Pl.'s SMF, ¶¶ 2–5, 14. Plaintiff's last reservation of rights letter in January 2015 stated that the "alleged miscalculations as to your client's revenues insurance costs are within the definition of D&O Wrongful Acts," and that it would "advance fees and reasonable/necessary expenses incurred in the defense of this matter." Defs.' SMF, ¶¶ 19. The letter also cautioned "the fact that certain provisions have been excerpted here does not mean that all portions of the policy are not important," and that the "reservation of rights is intended for your information and guidance and is based on the materials presented to date. [Plaintiff] fully reserves all its rights under the policy . . . ." Pl.'s SMF, ¶¶ 15–16. Thereafter, Plaintiff and Defendants communicated throughout Norris's criminal defense. *See id.*, ¶ 18. At one point, Plaintiff advised Norris's defense counsel that the Policy would not cover payments of any "restitutionary amount" Defendants made to the State. *See id.*, ¶ 19–21.

Plaintiff sent Norris a letter in March 2016, informing him that it would construe Defendants' legal expenses as "Defense Costs" covered under the Policy, but would not indemnify Defendants for the settlement sum in the Stipulated Settlement Agreement. *See* ECF No. 18-4, at 2. Plaintiff asserted two reasons for its position. First, it argued the "Claim" here was for non-monetary relief, relating to the servicing of subpoenas upon Defendants which led to an information. *Id.*, at 6. Because "Loss" under the Policy

excluded non-monetary relief, it argued, coverage was unavailable for the settlement payment. *Id.*, at 6. Second, Plaintiff contended that these amounts were uninsurable under Florida law because they would restore Defendants for "ill-gotten gains." *Id.* Plaintiff characterized the settlement sum as restitution, which was not considered "Damages" under the Policy. *Id.* It also noted that charitable donations generally were not insurable damages, and that it reserved the right to analyze whether the donation was a fine or penalty. *Id.*

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the trial court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 – 50 (1986). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

"The moving party bears the initial burden to show the district court . . . that there is no genuine issue of material fact that should be decided at trial. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). If the moving party meets this burden, then the non-moving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Any inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## III. DISCUSSION

Florida law mandates that courts interpret insurance contracts under their plain meaning, without need for extrinsic evidence. *See Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005). "Florida courts start with the plain language of the policy, as bargained for by the parties. . . . Policy terms are given their plain and ordinary meaning and read in light of the skill and experience of ordinary people." *Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 832 F.3d 1318, 1322 (11th Cir. 2016) (internal quotation marks and citations omitted). "[A] court must construe every insurance contract according to the entirety of its terms and conditions. . . . Because courts assume that the parties intended each provision to be relevant, courts must avoid a construction that does

not give all portions of the policy meaning and effect." *Int'l Ins. Co. v. Johns*, 874 F.2d 1447, 1456 (11th Cir. 1989) (internal citations omitted).

"If the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous," and the ambiguity is "construed against the drafter and in favor of the insured." *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). "In fact, exclusionary clauses are construed even more strictly against the insurer than coverage clauses." *Id.* But "[a] provision is not ambiguous simply because it is complex or requires analysis." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). At bottom, "if a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* (internal quotation marks omitted).

### A. The Policy Language

Before delving into whether the Stipulated Settlement Agreement constitutes a covered "Loss," I think it prudent to examine more closely the language of the Policy itself to establish the context for the arguments that follow. According to the Policy, a "Claim" includes "a criminal proceeding commenced by a return of an indictment." ECF No. 19-1, 10. It is undisputed that the subpoena and criminal information fell within the definition of a valid "Claim" under the Policy. In relation to such a Claim, the Policy covers a "Loss." *Id.*, at 12. "Loss" includes both "Damages" and "Defense Costs." *Id.* "Damages" include any monetary judgment or monetary settlement to the extent such damage is insurable under law. *Id.*, at 10. "Loss" is further defined not to include matters deemed uninsurable under the law. *Id.*, at 12.

Next comes the matter of the exclusionary provisions upon which Defendants heavily rely. The exclusions provide that Plaintiff shall not be liable for any payment for a "Loss" in connection with a "Claim" in two instances: 1) when the "Claim" arises out of Defendants "gaining any profit, remuneration or advantage to which they were not legally entitled; and 2) arising out of "any dishonest or fraudulent act or omission or any criminal act or omission by [Defendants]." *Id.*, at 14. Both exclusionary provisions state that they "only apply if a final and non-appealable judgment or adjudication establishes the [Defendants] committed such act or omission." *Id.* While the language is clear that the

exclusions do not apply without a judgment or adjudication, it is equally clear that the exclusions do not apply if there is not first a covered "Loss." Such a reading is consistent with Florida law. The Florida Supreme Court has stated, "[P]olicy exclusions cannot create coverage where there is no coverage in the first place." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 740 (Fla. 2002). "This statement of the law is undeniable–the existence or nonexistence of an exclusionary provision in an insurance contract is not at all relevant until it has been concluded that the policy provides coverage for the insured's claimed loss." *Id.*; *see also Amerisure Mut. Ins. Co. v. Auchter Co.*, 673 F.3d 1294, 1301 (11th Cir. 2012) ("Exclusionary clauses, however, 'cannot be relied upon to create coverage' through principles of contract interpretation where otherwise there is none."). The language of the Policy is clear and consistent with Florida law: the exclusions do not come into play unless the Stipulated Settlement Agreement constitutes a "Loss."

**B. The Stipulated Settlement Agreement is not a covered "Loss"**

"As a matter of law, 'Loss' does not include the 'restoration of ill-gotten gains,'" *Twin City Fire Ins. Co. v. CR Techs., Inc.*, 90 F. Supp. 3d 1320, 1325 (S.D. Fla. 2015) (quoting *CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co.*, 291 F. App'x 220, 223 (11th Cir. 2008)); *see also Level 3 Commc'ns, Inc. v. Fed. Ins. Co.*, 272 F.3d 908, 910 (7th Cir. 2001); *Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So. 2d 1005, 1007 (Fla. 1989) ("It is axiomatic in the insurance industry that one should not be able to insure against one's own intentional misconduct."). "The return of money received through a violation of law, even if the actions of the recipient were innocent, constitutes a restitutionary payment, not a 'loss.' It is immaterial whether the [defendant] committed fraud." *CNL Hotels*, 291 F. App'x at 223. In *CNL Hotels*, the court looked to the nature of the allegations against the insured, rather than whether the case was settled or proceeded to judgment, and found that the allegations against CNL supported the idea that the payments were restitutionary in nature and therefore not insurable. *Id.* ("CNL benefitted directly from this *alleged* violation of section 11 and returned some of this benefit to the Purchaser Class through a settlement.") (emphasis added). The court found it irrelevant whether the insured actually *committed* any wrongful act. *Id.*

Under this framework, the payments in the Stipulated Settlement Agreement are clearly restitutionary in nature. The case was initiated via a subpoena, followed by an

information charging five counts of grand theft against both Defendants. Defs.' SMF, ¶ 15; Pl.'s SMF, ¶¶ 7–9. By definition, theft is wrongly acquiring the property of another—here, money—in violation of the law. *See* Fla. Stat. § 812.014. Payments made to resolve this claim can only be said to disgorge Defendants of property to which they were allegedly not legally entitled. Defendants argue that because there is no admission of guilt, and because there is no use of the word "restitution" in the Stipulated Settlement Agreement, the language of the Stipulated Settlement Agreement precludes a finding that the payments contained within it are restitutionary. However, "[t]he agreement between [Defendants] and the [State of Florida] is not binding on any third party or this Court." *CNL Hotels*, 291 F. App'x at 224. The language of the Stipulated Settlement Agreement does not preclude a determination that the payments within it constitute restitution or are restitutionary in nature.[3]

Defendants then argue that the payments are not restitutionary under the Policy because the Policy requires a non-appealable final judgment before a payment can be considered restitution. Defendants rely heavily on *U.S. Bank* and *Gallup* for this interpretation. *See U.S. Bank Nat. Ass'n v. Indian Harbor Ins. Co.*, 68 F. Supp. 3d 1044, 1049 (D. Minn. 2014); *Gallup, Inc. v. Greenwich Ins. Co.*, 2015 WL 1201518, *9–10 (Del. Super. Ct. Feb. 25, 2015). In *U.S. Bank*, the court took it as undisputed that restitution was uninsurable. "That conclusion, however, does not end the analysis. The crux of this dispute is not whether restitution is insurable, but whether the settlement constitutes restitution." *Id.* The court found that "the policies require the settlement to actually be—and not just allegedly be—restitution to be uninsurable." *Id.* The *Gallup* court performed a similar analysis and reached a similar conclusion. *Gallup*, 2015 WL 1201518 at *9–10. Such a result is difficult to square with the rulings in *Level 3* and *CNL Hotels*. *U.S. Bank*, as well as Defendants, distinguish both *CNL Hotels* and *Level 3* on the basis that the policies at issue in

---

[3] In this same vein, Defendants' cited cases, *Mitchel* and *Johns*, are inapplicable. *See Mitchel v. Cigna Prop. & Cas. Ins. Co.*, 625 So. 2d 862 (Fla. Dist. Ct. App. 1993); *Int'l. Ins. Co. v. Johns*, 874 F.2d 1447 (11th Cir. 1989). Aside from both being decided prior to *CNL Hotels* and *Level 3*, neither case dealt with the restoration of ill-gotten gains. While *Mitchel* allowed coverage for a payment that was explicitly deemed "restitution," the labels attached by the parties to the payment do not govern; the underlying claim, while criminal in nature, had nothing to do with a benefit to the defendant or ill-gotten gains. *See Mitchel*, 625 So. 2d.

those cases did not have language requiring a final, non-appealable judgment for an exclusion to apply. According to this line of thought, if the "uninsurable" provision were interpreted "to preclude coverage for a payment based on a settlement resolving claims for restitution, it would nullify the Ill–Gotten Gains Provision that precludes coverage for a payment based only on a final adjudication determining that the claims warrant restitution." *Id.*, at 1050.

I disagree with this analysis for three main reasons. First, Florida law clearly states that an exclusionary provision does not apply unless there is coverage in the first instance. *Siegle*, 819 So.2d at 740; *Amerisure Mut. Ins. Co.*, 673 F.3d at 1301. The Policy language itself also requires such a reading. *CNL Hotels* and *Level 3* counsel that 'Loss' does not include the "restoration of ill-gotten gains" as a matter of law. *CNL Hotels*, 291 F. App'x at 223; *Level 3*, 272 F.3d at 910. *CNL Hotels* does not require a judgment for a payment to be restitutionary and says that the ultimate determining factor in deciding if a payment is restitutionary is the claim. *CNL Hotels* 291 F. App'x at 223. As discussed above, the payments are restitutionary in nature.

Second, I do not find *CNL Hotels* or *Level 3* distinguishable on the basis that the policies at issue did not include exclusionary language requiring a final judgment. While neither case delves deeply into the language of the insurance policies at issue, *Level 3* specifically mentions a final judgment. "Level 3 acknowledges that if a judgment had been entered in the suit against it on the basis of a judicial determination that it had engaged in fraud, Federal would win; *the policy so provides*." *Level 3*, 272 F.3d at 911 (emphasis added). This implies that the policy actually *did* require a judgment for a certain exclusion to apply and the court still found it inapplicable.

My third reason for disagreeing with the *U.S. Bank* and *Gallup* analysis is that interpreting the Policy as recommended by *CNL Hotels* and *Level 3* does not render coverage illusory nor nullify the exclusion provision. In fact, the very facts of the instant case bear out this conclusion. "Loss" includes "Defense Costs" as well as "Damages." "Defense Costs" are clearly covered as a "Loss" and do not fall within the exclusionary provisions on "Claims" arising out of the Defendants gaining profit to which they are not legally entitled or "Claims" arising out of a dishonest, fraudulent, or criminal act, unless and until there is a final, non-appealable judgment establishing the Defendants committed such act. Because

Defendants entered into a Stipulated Settlement Agreement, there is no final, non-appealable judgment that would render the "Defense Costs" excluded. This is not an uncommon reading of the Policy language, *see Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Brown*, 787 F. Supp. 1424, 1429 (S.D. Fla. 1991), *aff'd sub nom. Nat'l Union Fire Ins. v. Brown*, 963 F.2d 385 (11th Cir. 1992), and in fact, it was how Plaintiff interpreted the Policy. The *Level 3* court also envisioned a scenario demonstrating an instance where coverage would exist under their reading of the policy: "An example would be a fraudulent statement by a corporate officer that inflated the price of the corporation's stock without conferring any measurable benefit on the corporation. . . . [Such] expenses would be a loss to the company not offset by any benefit to it," rendering a payment settling the case not restitutionary in nature. *Level 3*, 272 F.3d 908, 911 (7th Cir. 2001). Clearly, interpreting the "Loss" provision as in *CNL Hotels* and *Level 3* does not render any portion of the Policy meaningless.

All in all, there is no ambiguity in the Policy and the payments Defendants agreed to pay as part of the Stipulated Settlement Agreement are restitutionary in nature regardless of whether there is an admission of guilt or a final adjudication.

### C. Defendants' Affirmative Defenses

In their response to Plaintiff's Complaint, Defendants asserted several affirmative defenses and a counterclaim. ECF No. 13, p. 5–12. Plaintiff moves for summary judgment as to these claims, stating the Parties agreed that there were only legal issues in dispute that could be resolved on summary judgment. ECF No. 20, p. 14; ECF No. 24, p. 14. Defendants argue that the affirmative defenses are not ripe for summary judgment because there exist genuine issues of material fact. ECF No. 27, p. 17; ECF No. 29, p. 10. As discussed below, I find there are no genuine issues of material fact precluding summary judgment on Defendants' affirmative defenses.

Defendant raises the affirmative defenses of breach of contract (also a Counterclaim), breach of the obligations of good faith and fair dealing, and failure to state a claim upon which relief can be granted. At this point in my Order it should be obvious that the Plaintiff has stated a claim for which relief can be granted. The other defenses, breach of contract and breach of the obligations of good faith and fair dealing, require that there actually be coverage under the Policy before these causes of action apply. *See Morrison v. Allstate Indem.*, 1999 WL 817660, at *2 (M.D. Fla. Sept. 9, 1999) (finding that breach of contract claim

failed to state a claim on which relief could be granted because insurer had no obligation under policy to provide coverage). Defendants do not respond to these points at all and I find that Plaintiff has proven the legal insufficiency of the defenses and counterclaim.

Defendants raise several other defenses that apply only in the event that coverage is found not to have existed. They include the equitable defenses of laches and estoppel, as well as waiver and ratification. ECF No. 13, p. 5–8. As an initial matter, "[i]t is not within the purview of the courts to create insurance coverage where none exists on the face of the insurance contract." *Morrison v. Allstate Indem.*, 1999 WL 817660, at *2 (M.D. Fla. Sept. 9, 1999); *see also Universal Underwriters Ins. Co. v. Fallaro*, 597 So. 2d 818, 819 (Fla. Dist. Ct. App. 1992) ("Courts have no power to create insurance coverage where none exists on the face of the insurance contract."). While Defendants argue that these defenses all rely heavily on issues of fact and are not appropriate for summary judgment, Defendants have not shown as a legal matter that Florida law allows for waiver, laches or ratification to create coverage where none exists. In fact, it appears coverage can only be created by a court in one specific instance, rendering Defendants other affirmative defenses inapplicable as a mater of law. "The general rule in applying equitable estoppel to insurance contracts provides that estoppel may be used defensively to prevent a forfeiture of insurance coverage, but not affirmatively to create or extend coverage." *Crown Life Ins. Co. v. McBride*, 517 So. 2d 660, 661–62 (Fla. 1987) (internal citations omitted). However, "[a]n exception to the general rule is the doctrine of promissory estoppel, a qualified form of equitable estoppel which applies to representations relating to a future act of the promisor rather than to an existing fact." *Id.* This exception is narrow, and can only "be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice." *Id.* "Such injustice may be found where the promisor reasonably should have expected that his affirmative representations would induce the promisee into action or forbearance substantial in nature, and where the promisee shows that such reliance thereon was to his detriment." *Id.*

That is not the case here. Despite claiming issues of material fact exist, Defendants have not contradicted any of Plaintiff's facts, nor have they submitted any new facts to support their theory of promissory estoppel. Defendants selectively quote from two documents already submitted as exhibits in support of their claim that Plaintiff

misrepresented that the Policy covered the Stipulated Settlement Agreement. The first is a Reservation of Rights Letter ("Letter") dated January 13, 2015. ECF No. 19-5. The relevant portions of the Letter show that Plaintiff indicated the Letter was "intended for [Defendants'] information and guidance and is based on materials presented to date. [Plaintiff] fully reserves all its rights under the policy, whether or not set forth here, and intends to rely on all relevant terms and conditions." *Id.*, at 7. The Letter explained that

> [t]he effect of this exclusion is as follows: if the criminal charges are resolved short of conviction of guilt (whether such conviction is by plea or otherwise), then the Claim never comes within the scope of the exclusion and the *Defense Costs* are the Underwriter's obligation. However, if there is an adjudication of guilt, the exclusion is triggered, with the result that the Underwriter shall not be liable for payment of any Loss – whether Defense Costs or otherwise.

*Id.* (emphasis added). While it appears clear that Plaintiff only ever intended to cover Defense Costs, Plaintiff further clarified its position in the second document to which Defendants quote, leaving out the most pertinent sentence. After being presented with the final draft of the Stipulated Settlement Agreement, Plaintiff responded that

> The settlement agreement arrived at 2:47 PM Friday and you are looking for a response by early afternoon one business day later. [Plaintiff] is not prepared to review this and advise as to coverage in that time frame. [Plaintiff] will agree not to interpose any objection to the document or the amounts agreed to be paid on the basis that Plaintiff's written consent to the settlement was not obtained. (Part 6, section III B.) *Otherwise we will review it as soon as reasonably possible and advise.*

ECF No. 13-3, 4. Clearly, Plaintiff had not made a coverage determination yet, but had only agreed to waive its objection on the specific ground that Defendants planned to agree to the settlement prior to obtaining written approval by Plaintiff in violation of Part 6, section III B of the Policy. *See* ECF No. 19-1, 17 ("[Plaintiff] shall not be liable for 'Loss' admitted by the [Defendants] without [Plaintiff's] prior written consent . . . ."). It was not reasonable for Defendants to think that this statement provided coverage, as can be seen by Defendants' defense attorney's response, "My time sensitive inquiry is not requesting a coverage opinion . . ." ECF No. 13-3, 4. Further, prior to settlement negotiations even beginning, Plaintiff explicitly stated that payments of a restitutionary nature would not be covered. ECF No. 19-8. Therefore, "the threshold element of a promise or representation concerning . . . liability coverage is missing" from Defendants' affirmative defense. *Prof'l Underwriters Ins. Co. v.*

11

*Freytes & Sons Corp.*, 565 So. 2d 900, 903 (Fla. Dist. Ct. App. 1990). There can be no promissory estoppel on these facts; to find "otherwise would be to declare that the rule that coverage is not created by estoppel, recognized by the supreme court in *Crown,* has been obliterated by its very narrow 'exception'." *Id.*

## IV. CONCLUSION

Having reviewed the arguments and the record, I find that Plaintiff has established that its Policy did not apply to the Stipulated Settlement Agreement. No genuine issue of material fact exists regarding the Policy. Plaintiff is not obliged to indemnify Defendants for the Stipulated Settlement Agreement. Accordingly, summary judgment in favor of Plaintiff is appropriate.

Plaintiff's Motion for Summary Judgment (ECF No. 20) is **GRANTED**, and Defendant's Motion for Summary Judgment (ECF No. 17) is **DENIED**. The Clerk shall **CLOSE** this case. I will issue a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**DONE and ORDERED** in chambers in Miami, Florida this 28th day of September 2017.

*[signature: Marcia G. Cooke]*

MARCIA G. COOKE
United States District Judge

Copies provided to:
*Edwin G. Torres,* U.S. Magistrate Judge
*Counsel of Record*